# UNITED STATES DISTRICT COURT
### for the
## DISTRICT OF MINNESOTA

Thomas F. Kuduk,

                Plaintiff,

v.

BNSF Railway Company,
a Delaware corporation,

                Defendant.

Civil Action No.: _____

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Thomas F. Kuduk ("Kuduk") brings this Complaint against Defendant BNSF Railway Company ("BNSF"). In support, Kuduk states and alleges as follows:

## PARTIES

1. At all times material herein, Kuduk was and is a resident of the City of Andover, State of Minnesota.

2. At all times material herein, BNSF was and is a Delaware corporation organized and existing as a railroad carrier engaged in interstate commerce. BNSF maintains and operates a Twin Cities Division office located at: 80 44th Avenue NE, Minneapolis, Minnesota, 55421-2501. Process can be served upon BNSF's registered agent: CT Corporation, 100 S 5th St., #1075, Minneapolis, MN 55402.

3. At all times material herein, Greg Jaeb ("Jaeb") was an officer or employee of BNSF, and he was one of Kuduk's supervisors.

4.  At all times material herein, Kuduk was an employee of BNSF working as a conductor and training coordinator.

## JURISDICTION & VENUE

5.  This action arises under a federal statute, Title 49 U.S.C. § 20109(d)(3), and this action is timely commenced within the meaning of that statute. On or about March 15, 2011, Kuduk filed a complaint with the Secretary of Labor alleging that BNSF violated 49 U.S.C. § 20109. More than 210 days have elapsed since Kuduk filed that complaint, the Secretary of Labor has not issued a final decision, and the delay is not due to any bad faith of Kuduk.

6.  Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to Kuduk's claim in this action occurred in this judicial district. Kuduk resides in this judicial district. BNSF resides in this judicial district since it conducts business in the district and it has sufficient contacts with the district for this Court to exercise personal jurisdiction over BNSF.

## VIOLATION OF 49 U.S.C. § 20109

7.  Each and every preceding paragraph is incorporated herein in its entirety by this reference.

8.  During his railroad career, Kuduk received various awards and commendations for his efforts to promote safety for BNSF and its employees. For example, he was congratulated by BNSF management for being one of the top 5% of employees for his safety record between 2003 and 2008. Kuduk also served on various safety committees during his career with BNSF and trained newly hired employees on safety.

9.  Kuduk engaged in various protected activities during his employment at BNSF,

2

including but not limited to the following:

(a) In 2009, Kuduk cooperated with a Federal Railroad Administration ("FRA") safety investigation at the Anheuser-Busch industry which resulted in an FRA investigator overruling BNSF supervisor Jaeb's claim that Kuduk had violated a railroad safety rule;

(b) On or around May 19, 2010, Kuduk provided information, directly caused information to be provided, or otherwise directly assisted in any investigation regarding Jaeb's failure to properly notify employees when Jaeb was approaching them during their work and wanted them to stop working;

(c) On or around May 24, 2010, Kuduk provided information, directly caused information to be provided, or otherwise directly assisted in any investigation regarding a handle on a piece of railroad equipment at Anheuser-Busch that Kuduk believed to pose a risk of injury to employees.

10. When Kuduk provided information, directly caused information to be provided, or otherwise directly assisted in any investigation regarding the conduct and conditions described above, Kuduk reasonably believed that the conduct and conditions constituted violations of federal law, rule or regulation relating to railroad safety.

11. In providing information, directly causing information to be provided, or otherwise directly assisting in any investigation regarding the conduct and conditions described above, Kuduk refused to violate or assist in what he reasonably believed to be violations of federal law, rule or regulation relating to railroad safety.

12. BNSF knew that Kuduk had raised concerns about the conduct and conditions

3

described above because Kuduk provided information or directly caused information to be

provided to, at a minimum, the following individuals:  FRA official John Smullins, Safety

Site Team Chairman Mike Wold ("Wold"), and Trainmaster Jaeb.  Individuals at BNSF with

knowledge of Kuduk's complaints, like Wold and Jaeb, had supervisory authority over

Kuduk or otherwise had the authority to investigate, discover, or terminate the conduct and

conditions described above.

13. On or about September 17, 2010, BNSF terminated Kuduk.

14. BNSF's termination of Kuduk was due, in whole or in part, to his engagement in

the above-described protected activities (*e.g.* cooperating with an FRA investigation and

providing information about violations of railroad safety regulations) as evidenced by

circumstances including, but not limited to,:

(a)     Following Kuduk's cooperation in the 2009 FRA safety investigation, BNSF

and Jaeb targeted Kuduk with a disproportionate amount of operations testing.

Operations testing can be used to assess whether an employee like Kuduk is

complying with federal railroad safety regulations and BNSF's workplace rules.

Failed operations testing can lead to discipline.  During the twelve months preceding

June 10, 2010, Jaeb personally subjected Kuduk to extensive operations testing: over

75 percent of BNSF's tests of Kuduk in this one-year time frame were conducted by

Jaeb.  BNSF and Jaeb also tested Kuduk more often than similarly-situated BNSF

employees during this time period with Kuduk being tested 173 times and other

employees being tested less than half as often.

(b)     After an operations test on or around December 23, 2009, Jaeb pressured

Kuduk to accept responsibility for a rule violation that carried more serious disciplinary consequences than the rule violation that Kuduk had actually committed. This put Kuduk in jeopardy of losing his employment with BNSF if BSNF decided in the future that he had committed another rule violation. When BNSF was deciding whether to terminate Kuduk in September 2010, it took the alleged December 2009 violation into consideration.

(c)     Subsequently, Jaeb accused Kuduk of committing a rule violation that BNSF calls one of the Eight Deadly Decisions. BNSF terminated Kuduk in September 2010 at least in part because of that alleged violation without legitimately considering whether Kuduk's conduct was excusable under an exception to the rule.

(d)     BNSF did not terminate other employees whom Jaeb accused of making one of the Eight Deadly Decisions.

15. BNSF's termination of Kuduk violated 49 U.S.C. §§ 20109(a)(1)(C), 20109(a)(2), and 20109(a)(5).

16. As a result of BNSF's unlawful discrimination, Kuduk sustained a loss of wages and will in the future continue to sustain a loss of wages, including the loss of fringe benefits, the exact amount of which Kuduk is unable to accurately estimate or determine at this time. In addition, Kuduk has incurred out of pocket expenses for medical care and insurance.

17. As a result of BNSF's unlawful discrimination, Kuduk has experienced pain, suffering, and loss of enjoyment of life, and he will continue to suffer pain, suffering, and loss of enjoyment of life in the future.

18. As a result of BNSF's unlawful discrimination, Kuduk has incurred and will incur

other compensatory damages, including but not limited to: attorney fees, expert witness fees, and litigation costs.

19. BNSF's unlawful discrimination against Kuduk merits punitive damages to deter further unlawful discrimination.

## PRAYER FOR RELIEF

20. WHEREFORE, Kuduk respectfully requests that this Court enter judgment in his favor and against BNSF in an amount in excess of $200,000 to fully compensate Kuduk for the damages and losses he has suffered, together with all costs, disbursements, interest, and damages allowed pursuant to 49 U.S.C. § 20109(e), including:

(a)     Reinstatement to his position as a conductor and training coordinator, with the same seniority status that he would have had but for the discrimination;

(b)     Backpay with interest;

(c)     Clearing his record of discipline arising from the incident on or around June 9, 2010;

(d)     Any and all compensatory damages, including any special damages sustained as a result of the discrimination, such as litigation costs, expert witness fees, and reasonable attorney fees;

(e)     Punitive damages; and

(f)     Such other and further relief that this Court deems just and equitable.

Respectfully submitted,

Dated:  February 1, 2012

_____

Louis E. Jungbauer, #134818
Justin N. Brunner, #389916,
*Brunner's application for admission to U.S.Dist.Ct. for
the Dist. Of Minn. is anticipated*

ATTORNEYS FOR PLAINTIFF
YAEGER, JUNGBAUER & BARCZAK, PLC
2550 University Ave. W., St. 345N
Saint Paul, Minnesota 55114-2006
Telephone:          (651) 288-9500
Facsimile:          (651) 288-0227
Ljungbauer@yjblaw.com